*J. W. & R. W. Crenshaw,* for defendant.

## SIMPSON GROCERY COMPANY *v.* KNIGHT.

1. Where the owner of property conveys to another person against whom there is a valid outstanding judgment at the time, for the sole purpose of putting title in the grantee so that he may sell or pledge the property for the purpose of raising money to pay over to the owner, the lien of the judgment will not attach and make the property subject as against a claim duly filed by the owner of the equitable interest.

2. Had the fi. fa. in question been based upon a judgment growing out of credit extended to the defendant in fi. fa. upon the faith of his ownership of the land, a different question would have been presented.

No. 506.   SEPTEMBER 14, 1918.

Claim.   Before Judge Bartlett.   Polk superior court.   July 3, 1917.

*W. W. Mundy* and *Fielder & Fielder,* for plaintiff.

*Ault & Wright,* contra.

BECK, P. J.   Simpson Grocery Co., plaintiff in a fi. fa. founded upon a judgment dated August 30, 1898, had the execution levied, on the 4th day of February, 1916, upon certain lots of land in the City of Cedartown, as the property of the defendant in fi. fa., J. C. Knight Sr.   J. C. Knight Jr. interposed his claim against the levy.   Upon the trial of the case possession by the defendant in fi. fa. at the time of the levy was admitted by the claimant. The trial took place on September 1, 1916, and resulted in a verdict in favor of the claimant.   The plaintiff made a motion for a new trial, which was overruled.

1.   Three deeds, dated May 19, 1913, executed by the claimant and purporting to convey the three lots of land in question to the

defendant in fi. fa., were introduced in evidence by the plaintiff in fi. fa. The claimant undertook to explain the purpose for which these deeds were executed, and by way of explanation he said: "The three deeds dated May 19, 1913, from the claimant to the defendant in fi. fa., conveying all the property levied upon and involved in the issue on trial, were made out for the sole purpose of borrowing money here to put in my business. I was needing money in view of the fact that the paper market had gone so high that we had to put up a special bond to get paper ahead. I wanted to either sell the property or borrow on it, and I got these deeds made out in May and sent them to him with the understanding that he was to borrow the money and send it to me." The three deeds referred to in the testimony of the claimant appear to have been signed in the City of St. Louis, Missouri, and each of them appears to have been probated on May 20, 1913. The defendant in fi. fa. was also permitted to testify that the three deeds were made by the claimant to him so that he could borrow money on the property, or, by selling the property as the agent of the claimant, he could procure funds for the claimant. The testimony of the claimant, just quoted, was objected to on the grounds, that the deeds showed on their faces what they were, and that this testimony "would have the effect of varying the written contract," and that there were no pleadings which would authorize the introduction of evidence of this character. The court overruled the objection, and the plaintiff excepted.

We are of the opinion that the court properly allowed the introduction of this testimony. No other pleadings in a claim case were necessary to authorize the introduction of evidence tending to show that the equitable title to the property was in the claimant. *Frick Co.* v. *Taylor,* 94 *Ga.* 683 (21 S. E. 713). And the evidence itself was admissible under the rule, that, "In all cases where a trust is sought to be implied, the court may hear parol evidence of the nature of the transaction, or the circumstances, or conduct of the parties, either to imply or rebut a trust." Civil Code, § 3741. This was not an attempt to engraft an express trust by parol upon the written deed, and it does not in any way violate the inhibition against varying or contradicting the terms of a written instrument by parol testimony. It only goes to the extent of establishing the contention of the claimant, that the equitable interest in the land was in him and the legal title for a specific

purpose was in the defendant in fi. fa.  See *Holmes* v. *Holmes,* 106 *Ga.* 858 (33 S. E. 216).  This ruling does not conflict in any way with the provisions of the Civil Code, § 3258, which declares that a deed absolute on its face and accompanied with possession of the property shall not be proved (at the instance of the parties) by parol evidence to be a mortgage only, unless fraud in its procurement is the issue to be tried.  Nor is the ruling in conflict with the decisions which applied the section just cited to those cases where a grantor contended that a deed absolute on its face and accompanied with possession of the property was a security deed only; for in the case in hand there was no attempt to prove that the deed was a mortgage or a security deed merely.

From the report of the case of *McKinney* v. *Burns,* 31 *Ga.* 295, it appears that one Burns, the son-in-law of McKinney, executed to his father-in-law a deed to certain realty, and at the same time released a debt to him, provided that he would convey title to the property in trust to the wife and children of the grantor.  No money was paid by the father-in-law, McKinney, to Burns, the grantor, nor was any note given, nor any other consideration.  McKinney acknowledged this agreement to the day of his death, but died without having executed a trust deed in accordance with the agreement.  The administrator of McKinney advertised the land for sale, and Burns and his wife and children filed a bill in equity, seeking injunction to prevent the sale and to have a conveyance executed according to the agreement between McKinney and Burns, or to have a resulting trust declared in favor of Burns; and upon the trial of the case it was decreed that this should be done.  In that case this court held: "It is contended that a parol trust to the land can not be engrafted on the absolute deed from Burns to McKinney.  There is no attempt to do this.  The legal title was conveyed to McKinney merely to enable him to pass it over to Mrs. Burns and her children.  The deed is founded upon no consideration good or valuable.  The title was conveyed to him for a particular purpose.  It operates as a power merely.  Powers of attorney are frequently executed in this way, and any attempt to hold or appropriate the land under such a power would constitute a fraud, against which equity would grant relief."  We are of the opinion that in the instant case the deed operated as an instrument creating a power; and that if this suit were between the grantor and the grantee, and the grantee under the facts were

resisting an attempt upon the part of the grantor to set up his equitable title, a court of equity would hold that an attempt upon the part of the grantee to appropriate the land under such a deed executed under the circumstances disclosed by the undisputed evidence here would constitute a fraud, and that the deed was nothing more than a power, and that there was an implied or resulting trust in favor of the grantor. And inasmuch as the fi. fa. levied in the present case was based upon a judgment rendered before the conveyance made by the claimant to the defendant in fi. fa., and the judgment did not· grow out of any debt based upon credit extended on the faith of this property being in the defendant in execution, the plaintiff in execution is not in a better position to deny the equitable title or interest of the claimant than the grantee would be if the contest were between the grantor and the grantee, and the grantee under the facts of the case were attempting to defeat the equitable interest of the grantor.

2. Of course, if the fi. fa. levied in this case had been based upon a judgment which grew out of a debt for credit extended on the faith of the ownership of the property by the defendant in execution, a different question would have been presented.

The ruling which we have made above is controlling in the case, as the contentions of the claimant were established by uncontroverted evidence; and·it is unnecessary to pass upon the admissibility of certain letters which were admitted in evidence over the objection of the plaintiff.

*Judgment affirmed. All the Justices concur, except Fish, C. J., and Gilbert, J., who dissent.*

FISH, C. J., dissenting. I can not concur in the opinion of the majority of the court. In 1837 the legislature passed an act, as follows: "Whereas it is now the practice, in some of the circuits of this State, to admit oral evidence to prove that deeds and bills of sales, absolute upon their face, were intended as mortgages, or securities for the payment of money or other thing only, without any charge of fraud in obtaining them, and whereas such practice may lead to serious injuries to the rights of the good people of this State over their property, and may present strong inducements to the commission of frauds and perjuries; for remedy whereof, be it enacted, that from and immediately after the passing of this act, oral evidence shall not be received in any courts of this State to show that a deed or bill of sale absolute upon its face,

made after the passing of this act, was intended as a mortgage or security for the payment of money or any other thing, unless there is a charge of fraud in obtaining the same, in which case oral evidence, going to show the fraud only, may be received; any law, usage, custom, or practice to the contrary notwithstanding." The act was codified and now appears as section 3258 of the Civil Code, which is as follows: "A deed or bill of sale, absolute on its face and accompanied with possession of the property, shall not be proved (at the instance of the parties) by parol evidence to be a mortgage only, unless fraud in its procurement is the issue to be tried." It should not be held that this salutary rule of evidence is restricted to the single instance where it is sought to show by parol testimony that a deed or bill of sale absolute in form "was intended as a mortgage or security for the payment of money or any other thing." The act of 1837 declared that parol evidence should not be received in such an instance; it did not undertake to alter the ancient rule of evidence that parol testimony is inadmissible to contradict or add to the terms of a deed and to create a trust in land. The act was not enabling, but merely declarative of a rule of evidence long previously existing, but which was not being adhered to. From the language of the act it would seem that only in some of the circuits of the State was it the practice to admit oral evidence to prove that deeds and bills of sale absolute upon their face were intended as mortgages, and that such was not the practice in the other circuits, and that the purpose of the act was to require the correct rule to be applied in all the circuits.

My conclusion is that in the absence of accident, fraud, or mistake, a deed absolute in form and accompanied with possession of the property can not be proved by parol evidence, at the instance of a party, to have been executed for the purpose of enabling the grantee to borrow money on the property for the grantor. *Mays* v. *Shields,* 117 *Ga.* 814 (45 S. E. 68). What was held in *McKinney* v. *Burns,* 31 *Ga.* 296, and *Holmes* v. *Holmes,* 106 *Ga.* 858, relied on in the majority opinion, is not controlling in the present case, for at least one good reason, and that is, in neither of those cases did possession of the property accompany the delivery of the deed.

I am authorized by Justice Gilbert to say that he concurs in this dissenting opinion.