## WELDON et al. v. WELDON et al.

1. Upon the death of one intestate, in this State, his realty descends directly to his heirs, subject to be administered by his legal representatives, if any, for the payment of debts, and the purposes of distribution.

(a) Under the allegations of the petition the title to the land in controversy vested in the heirs, but became divested by the administrator's sale.

2. Where a father purchases land at an administrator's sale for the benefit of his children, and a deed is made to him by the administrator in consideration of the interest the children have in the decedent grandfather's estate, and the father pays no consideration of his own for the land, a trust will thereby be implied in favor of the children.

3. Under the facts alleged in the petition the plaintiffs were not barred from recovery by reason of laches; and the court erred in sustaining the demurrer and in dismissing the petition.

No. 2660. JANUARY 13, 1922.

Equitable petition. Before Judge Thomas. Lowndes superior court. May 17, 1921.

M. E. Weldon et al. brought an equitable petition against B. H. Weldon and I. J. Weldon, for the recovery of a three-fourths interest, or such other interest as might appear, in the west half of lot of land 52 in the 12th district of Lowndes County; and for other relief. The petition alleged in substance the following: John Hodges, the grandfather of the plaintiffs, died in 1875, leaving what purported to be a will, which was improperly executed and which was never probated. After the death of John Hodges his son, John A. Hodges, was appointed administrator upon his estate. After his appointment the administrator, after due advertisement, put up and offered for sale in parcels the land belonging to the estate of John Hodges, so that the decedent's heirs at law would be given an opportunity to buy in the respective parcels of land which their father intended to give them by the improperly executed will. At the administrator's sale I. J. Weldon, one of the defendants, whose wife, Susan Hodges Weldon, had died, leaving four children (M. E. Weldon, Sarah Mozelle Weldon, O. J. Weldon, and I. M. Weldon), bought the west half of the lot of land 52, and did not pay the amount of his bid to the administrator; it being the intention and purpose of the administrator to deed and convey the west half of the lot of land in controversy to I. J. Weldon for the use and benefit of the four children of Susan Hodges Weldon, they being her sole heirs at law, she having departed

this life prior to the death of her father, John Hodges, and it being the intention and purpose of I. J. Weldon to receive the land for the use and benefit of the four children of Susan Hodges Weldon, named above. But the administrator executed and delivered to I. J. Weldon a deed, and he went into possession under it. The exact date of the sale and deed is not given; but I. J. Weldon and those claiming under him were in possession of the tract sued for at the date of bringing this suit. The children of O. J. Weldon, deceased, are not parties to the suit. The petition as amended alleged that I. J. Weldon has for a long term of years held out and claimed the land in controversy in his own name and right and title, and only recently, within two or three months before the filing of the petition, plaintiffs have been advised and learned for the first time that the west half of the lot of land in controversy was acquired by I. J. Weldon from their grandfather's estate, for the use and benefit of the four named children of Susan Hodges Weldon; and whatever title I. J. Weldon received from the administrator of John Hodges was received as trust property for the four children of Susan Hodges Weldon. I. J. Weldon has wilfully and purposely concealed from the plaintiffs their interest in the property, with the intent and purpose of converting it to his own use, and for the purpose of defrauding plaintiffs out of their property that came into his hands for their benefit and not for his own use and benefit. Plaintiffs are advised and believe that I. J. Weldon, at the time of receiving the deed to hold the property for the benefit of the four named children of Susan Hodges Weldon (the exact date not being known to plaintiffs), formed the intent to hold and claim the property in his own individual right, to the exclusion of the children of Susan Hodges Weldon, and of appropriating it to his individual use, thereby defrauding the rightful owners of their interest in their grandfather's estate. To this end I. J. Weldon purposely neglected to have the deed recorded, and purposely and wilfully kept plaintiffs in ignorance of their rights respecting the property, he being morally and legally bound to disclose to them their interest in the property. He wilfully and purposely concealed from them the nature and character of their interest in the land. At the time of the execution of the deed by John A. Hodges, administrator, the plaintiffs were very small children, ranging in age from two to six and a half years. At the time they respectively

reached their majority I. J. Weldon was openly and positively claiming the property as his own. Being the father of the plaintiffs, they naturally trusted him and had confidence in him, and because of their trust and confidence they did not even suspect or have any reason to suspect that any fraud was being perpetrated upon them, or had been perpetrated upon them; and for this reason they were deterred from sooner making an investigation and discovering the fraud so perpetrated upon them. B. H. Weldon, the other defendant, is in possession of eight acres of land, more or less, in the southwest corner of lot No. 52 in controversy, and claims title to the same under and through I. J. Weldon; and I. J. Weldon claims under and through John Hodges, the intestate, under whom plaintiffs likewise claim.

The defendants filed a demurrer to the petition, on the grounds, first, because the petition set forth no cause of action; and second, because it appears upon the face of the petition that plaintiffs' right of action, if any they had, is barred by lapse of time and by their laches. The court sustained the demurrer and dismissed the petition, and the plaintiffs excepted.

*C. Bradford, J. J. Murray,* and *Whitaker & Dukes,* for plaintiffs.
*Terry Hendricks* and *E. K. Wilcox,* for defendants.

HILL, J. (After stating the foregoing facts.)

1. In this State, on the death of one intestate, realty descends directly to the heirs at law of such intestate, subject to be administered by his legal representative, if there be one, for the payment of debts and for the purpose of distribution. Civil Code (1910), § 3657. Under the allegations of the petition, even if the land in controversy vested in the plaintiffs as heirs at law of John Hodges, their grandfather, the title became divested by the administrator's sale; it not appearing from the petition that the sale was irregular for any reason, but on the contrary that the sale was had in the regular course of administration. *Cook* v. *Cook,* 67 Ga. 381 (3). Therefore the plaintiffs can not recover on the theory that the legal title to the land in controversy is in them as heirs at law of their deceased grandfather.

2. It is alleged in the petition that the defendant, I. J. Weldon, did not buy, and does not hold, the land in controversy as his own, but that he bought in the land at the administrator's sale, not paying his own money for it, but bought it for the plaintiffs, the con-

sideration being their share in their grandfather's estate. And it is insisted that this constitutes an implied trust in favor of the plaintiffs. Trusts are implied when the legal title is in one person, but the beneficial interest, either from the payment of the purchase money *or other circumstances,* is either wholly or partially in another. Civil Code (1910), § 3739. Whether the deed is in terms a trust deed does not appear from the petition, which alleges that the deed was never recorded and has been withheld by I. J. Weldon from the plaintiffs, so that they are unable to know the exact terms of the deed; but the petition does allege that the defendant purchased this property for the use and benefit of the plaintiffs, the consideration being their interest in their grandfather's estate. On demurrer this allegation must be taken as true, whether in point of fact it is true or not; and we are of the opinion that if the defendant did buy in this property for the plaintiffs on the consideration stated, a trust would be implied in their favor; and although the deed might have been taken in the name of the defendant, he will be held to hold it in trust for the plaintiffs.

3. It is insisted that the suit can not be maintained, for the reason that the plaintiffs have been guilty of laches in bringing it; that about forty-five years have elapsed since the death of the plaintiffs' grandfather and the making of the deed to the defendant, and therefore that they have been so negligent that a court of equity will not aid them in recovering. But the petition as to this alleges, as set out in the foregoing statement of facts, that plaintiffs, only within two or three months of the filing of the petition, learned for the first time that the land in controversy was acquired by their father from their grandfather's estate for their use and benefit. This being true, it can not be said as matter of law, under all the facts alleged in the petition with reference to the concealment of the deed and its not being put on record, that the plaintiffs have been guilty of such laches as will bar them of recovery in case they support all the allegations of the petition on the trial of the case by competent evidence.

*Venable* v. *Burton,* 129 *Ga.* 537 (59 S. E. 253) ; *Kelly* v. *Hamilton,* 135 *Ga.* 505 (3), 507 (69 S. E. 724).

In view of what has been said, we think the petition set out a cause of action as against the demurrer filed, and that the court erred in sustaining the demurrer and in dismissing the case.

*Judgment reversed. All the Justices concur.*