## 39015. CONNER et al. v. CONNER.

MARSHALL, Justice.

Cecil Conner named his brother, Henry, as beneficiary in a group life insurance policy he purchased at his place of employment. After Cecil's death, his former wife, Hazel (his two minor children's mother), as next friend of the children, brought this action against Henry to impress the proceeds of the policy with an implied trust in favor of the children; to require the alleged trustee, Henry, to give bond; and to enjoin the alleged trustee from disposing of the policy proceeds. After receiving the testimony of witnesses, the trial judge granted the defendant's motion to dismiss. The plaintiffs appeal. We reverse.

1. "No contention is made that any agreement was entered into in writing that would create an express trust. Code § 108-105. Accordingly, since there was no evidence of a trust being created in writing, the sole question presented as to the creation of a trust is limited to an implied trust as provided for in Code § 108-106. This Code section provides: 'Trusts are implied — 1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase money *or other circumstances,* is either wholly or partially in another. 2. Where, from any fraud, one person obtains the title to property which rightly belongs to another. 3. Where from the nature of the transaction it is manifest that it was the intention of the parties that the person taking the legal title should have no beneficial interest. 4. Where a trust is expressly created, but no uses are declared, or are ineffectually declared, or extend only to a part of the estate, or fail from any cause, a resulting trust is implied for the benefit of the grantor, or testator, or his heirs.'" (Emphasis supplied.) *Taylor v. Aetna Life Ins. Co.,* 235 Ga. 630 (2) (221 SE2d 45) (1975).

"Implied trusts are such as are inferred by law from the nature of the transaction or the conduct of the parties (Code Ann. § 108-104), and are either resulting or constructive. [Cits.] . . . A constructive trust arises not from the intent of the parties, but by equity with

respect to property acquired by fraud, or although acquired without fraud where it is against equity that the property should be retained by the one who holds it. [Cits.]" *Aetna Life Ins. Co. v. Weekes,* 241 Ga. 169 (1) (244 SE2d 46) (1978).

"It was not the proper function of the trial court in passing upon the motion, nor is it this court's function on appeal, to decide whether or not the evidence of such an agreement is 'clear and convincing' as this determination is for the jury. The parties are entitled to introduce, and the jury is entitled to consider, as tending to prove the intention of the parties, evidence relating to the nature and circumstances of the transactions and the conduct and declarations of the parties. These principles are well rooted in our jurisprudence. [Cits.] Respected legal commentators agree with these views. [Cits.]" *Epps v. Wood,* 243 Ga. 835, 839 (2) (257 SE2d 259) (1979).

We are cited to cases which, like the present case, involve beneficiaries on life insurance policies. See *Taylor v. Aetna Life Ins. Co.,* 235 Ga. 630, supra, (2) and cits. While these cases do hold that no implied trust was shown, they must be restricted to the particular facts in each case. E.g., "No implied trust being shown *under the facts of this case . . .*" (Emphasis supplied.) *Taylor,* supra, p. 632. The fact that there is a writing which contradicts the existence of an implied trust, has not prevented this court from examining the nature and circumstances of the transaction and the conduct and declarations of the parties. E.g., *Epps v. Wood,* 243 Ga. 835, supra, in which a jury issue as to implied trust was found in spite of a contrary written deed. In fact, we have held specifically that "[t]he fact that a writing was involved did not . . . militate against an implied trust." *Hodges v. Hodges,* 221 Ga. 587, 589 (146 SE2d 313) (1965).

2. Evidence was adduced at the trial as follows. The insurance agent who sold the defendant the policy in question, testified that, in his explanation to Cecil and his fellow employees as to the coverage, he had told them that, in the event of death, if a minor child is named as beneficiary, the money will be held by the insurance company until guardianship of the children can be obtained; that Cecil asked him a question about this, and, after the explanation, he told the agent that "he wanted the money in their [his children's] behalf"; and that he did not explain to the employees how to set up a trust.

Cecil's employer testified that — after Cecil was told that if he made the children his beneficiary, their mother Hazel, as guardian, would control it — Cecil had said that he would make "his kids" the beneficiaries, but he didn't want Hazel to have any control at all of the money; and that, after the explanation and discussion, Cecil had made his brother, Henry (the defendant), beneficiary.

Henry, as well as several other witnesses, testified that he and

Cecil were very close, and trusted each other. Although Henry testified that Cecil had asked him (with no others present) merely to use the proceeds to pay off his debts, he admitted that "everybody in the country" had said that he was going to set up a trust fund for Cecil's children, and he testified that he intended to do that. There was evidence that Cecil loved his children and was concerned about their welfare. Several witnesses testified to the effect that Cecil had mentioned that he had taken out an insurance policy to take care of his children; that he'd made Henry the beneficiary; that he trusted Henry and knew he'd take care of them; and that Henry would set up a trust for them. Cecil's niece testified that, when she asked Henry after Cecil's death whether the money was going to the children, Henry had replied that it was going to be set up in a trust fund, which was what Cecil had wanted him to do.

The evidence was sufficient to make a jury issue as to whether an implied trust — either resulting or constructive — was created. Accordingly, it was error to sustain the motion to dismiss the complaint.

*Judgment reversed. All the Justices concur, except Smith, J., who dissents.*

DECIDED OCTOBER 6, 1982.

*David C. Jones, Jr.,* for appellants.
*Robert E. Andrews,* for appellee.